SO ORDERED.

SIGNED August 27, 2012.

ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

IN RE:

GREGORY SCOTT EVERETT                                    CASE NO. 11-51175

    Debtor

---
MEMORANDUM RULING
---

    Before the court is the Trustee's Application to Approve Compromise pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Trustee seeks to compromise the disputes between the estate and RSL Funding, LLC. These disputes arise from the debtor's pre-petition attempt to assign payments that he was to receive from a structured settlement in exchange for a $216,000 cash payment. These disputes were unresolved as of the petition date. The court sustained the Trustee's objection to the debtor's exemption claim. Any rights or claims that the debtor had against RSL arising from the original assignment agreement are estate property, and thus fall within the exclusive purview of the Chapter 7 trustee as far as settlement. Nevertheless, the debtor has

challenged the settlement on the grounds that the pre-petition assignment agreement with RSL is void because of an anti-assignment clause in the structured settlement papers and the annuity contract that funds the monthly payments to the debtor. Alternatively, the debtor argues that RSL breached the pre-petition assignment agreement because it never paid the $216,000 to the debtor. Pruco Assignment Corporation, the owner of the annuity at issue, also objects to the Trustee's proposed compromise on the grounds, *inter alia*, that the debtor never had the authority to assign his monthly payments from the annuity to RSL.

The standards for approving a compromise are well settled: (1) is the settlement "fair and equitable," and (2) is it "in the best interests of the estate"? See <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968); <u>In re Jackson Brewing Co.</u>, 624 F.2d 599, 602 (5th Cir.1980). The Fifth Circuit has articulated a four-prong test to be applied to determine if a settlement is beneficial: (1) the probability of success of litigation; (2) the complexity and likely duration of the litigation; any attendant expense, inconvenience, or delay; and possible problems collecting a judgment; (3) the interest of creditors with proper deference to their reasonable views; and (4) the extent to which the settlement is truly the product of arms-length negotiations. <u>Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)</u>, 119 F.3d 349, 355–56 (5th Cir.1997). Applying these standards here, the court has concerns and questions with respect to the proposed settlement based on the Motion to Compromise, the arguments of counsel, and the exhibits admitted during the hearing on the motion.

First, the court requires an accounting of the total amount RSL would receive pursuant to the agreement. Based on the Motion

Page 2

11-51175 - #176  File 08/27/12  Enter 08/27/12 13:50:45  Main Document - Application to Approve Compromise  Pg 2 of 5

to Compromise, it appears that RSL will receive approximately 67 payments of $3,675.39 totaling $246,251 in exchange for $65,309.01 – a discount of approximately 73%. In contrast, the debtor's original agreement with RSL called for RSL to pay the debtor $216,000 for $396,942.12 of payments – a discount of approximately 46%. The Motion to Compromise cites a provision in the pre-petition assignment agreement allowing RSL to deduct missed payments on a dollar-for-dollar basis. Nevertheless, the validity of the contract is disputed and this settlement is intended to resolve that dispute on terms that are fair and equitable and beneficial to the estate. It is not clear to the court how this steep discount is fair and equitable and beneficial to the estate (and to other creditors, who hold over $100,000 in claims) given that RSL will not only receive payments totaling $246,251, but also will be free to assert its secured and unsecured claims. These secured and unsecured claims purportedly represent damages, attorneys fees, and costs arising from the debtor's alleged breach of the pre-petition assignment agreement with RSL. In sum, it appears that RSL will be the primary beneficiary of this settlement at the expense of other creditors.

    Second, paragraph 13 of the Motion to Compromise states:

> RSL Funding, LLC agrees and consents that the $64,309.01 (less payments due but not paid to RSL Funding, LLC after May 1, 2012) paid to the estate and the funds presently held in the estate will first be used to pay administrative expenses of the Chapter 7 with RSL Funding, LLC reserving its rights and preserving any actions of setoff or recoupment and will file or has filed secured and unsecured claims to be repaid from the funds in the estate or due to the estate, entitling it to be repaid from the funds in priority over any other priority creditors herein to the extent of this $64,309.01(less payments due but not paid to RSL Funding, LLC after May 1, 2012), with the funds to be held by the Trustee pending further order of the court. As part of the compromise, by agreement with RSL Funding, LLC and subject to this order, the trustee would support this action by RSL Funding, LLC, subject

only to administrative expenses being senior to RSL Funding, LLC's right of setoff. Provided, however, RSL Funding, LLC and the trustee would agree that any filed claims for any Domestic Support Obligation in an amount of up to $15,000.00 but no more, may be paid as well prior to any distribution to RSL Funding, LLC as a secured creditor, and with RSL Funding, LLC also having rights as an unsecured creditor.

It appears from this paragraph that the proposed settlement dictates a favorable treatment for RSL's claims ahead of other creditors presumably on the basis that RSL holds a secured claim. Even though no objection to RSL's secured claim has yet been filed, it is unclear to the court how a settlement that recognizes this claim is fair and equitable when RSL is also receiving payments totaling $246,251 for only $65,000 in consideration.

Third, the proposed settlement appears to impact the rights of Pruco without including Pruco as a party. Pruco contends that, as the owner of the annuity, it has the sole authority to direct payments under the annuity. Pruco also contends that the assignment proposed by the Trustee not only violates the terms of the annuity contract, but will create significant tax liabilities for Pruco. It is unclear to the court how this settlement benefits the estate if it only opens up additional disputes and potential litigation with Pruco.

Finally, the proposed compromise requires the court to make findings of fact and conclusions of law as follows:

> ... that the agreement with RSL Funding, LLC is a nonexecutory contract, with the result that the purchase by RSL Funding, LLC of the monies due under the annuity are adjudged to have occurred with the execution of the purchase agreement in January 2009, that the purchase agreement is a contract that had been fully performed on by RSL Funding, LLC to the extent of the ability of RSL Funding, LLC, but wherein Everett blocked or prevented the payment of the balance to him with his breach of contract beginning in early 2009, and that the remaining monies are due RSL Funding, LLC (or its assignee, RSL Special-IV, Ltd. for which RSL Funding, LLC acted as special servicer), without set-off or delay on the 5th of each

Page 4

month thru and including December 5, 2017, in the monthly amount of $3,675.39.

(Motion to Compromise at ¶ 14). While parties can stipulate to facts in connection with a settlement, the court will not approve a settlement that calls for the court to decide disputed questions of fact or law without a record and an opportunity for all parties in interest to be heard.

In sum, the court cannot approve the settlement in its current form until these concerns are addressed. The Trustee has until **September 17, 2012** to file a supplemental memorandum addressing the concerns outlined by the court. Counsel for the debtor and Pruco then have until **October 1, 2012** to respond to the Trustee's supplemental memorandum.

**IT IS SO ORDERED.**

###